UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YARITZA T. o/b/o V.Y.O,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:23-CV-06354 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Yaritza T. ("Plaintiff") brings this action on behalf of V.Y.O., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

On November 5, 2020, Plaintiff protectively filed an application for SSI on behalf of V.Y.O., a child under the age of 18. (Dkt. 5 at 19, 194-200).[1] Plaintiff alleged V.Y.O.'s disability began on November 20, 2019. (*Id.* at 19, 194). Plaintiff's application was initially denied on March 23, 2021. (*Id.* at 19, 110-25). On February 10, 2022, Plaintiff and V.Y.O. appeared at a telephonic hearing before administrative law judge ("ALJ") Michael Devlin. (*Id.* at 19, 36-46). On March 15, 2022, the ALJ issued an unfavorable decision. (*Id.* at 19-30). Plaintiff requested Appeals Council review, and her request was denied on April 27, 2023, making the ALJ's decision the Commissioner's final determination. (*Id*. at 5-10). This action followed.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in

an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924, internal citations omitted).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether V.Y.O. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that V.Y.O. was born on February 20, 2009, and therefore was a school-age child on November 5, 2020, the date the application was filed, and was an adolescent on the date of the written determination. (Dkt. 5 at 20). At step one, the ALJ determined that V.Y.O. had not engaged in substantial gainful activity since November 5, 2020, the application date. (*Id*.).

At step two, the ALJ found that V.Y.O. suffered from the severe impairment of asthma, unspecified depressive disorder, learning disability, and anxiety disorder with separation anxiety. (*Id.*).

At step three, the ALJ found that V.Y.O. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). Similarly, the ALJ found that V.Y.O. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.* at 22). In making this determination, the ALJ considered V.Y.O.'s functioning in each of the above-mentioned six domains and concluded that V.Y.O. had a less than marked limitation in acquiring and using information, a marked limitation in attending and completing tasks, a less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, a less than marked limitation in the ability to care for herself, and a less than marked limitation in health and physical well-being. (*Id.* at 23). Accordingly, the ALJ found that V.Y.O. was not disabled as defined in the Act. (*Id.* at 30).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that he erred in his assessment of the domain of acquiring and using information. (Dkt. 8-1 at 16-26). Plaintiff generally contends that the ALJ should have found that V.Y.O. had a marked limitation in this domain and that his conclusion that she

had "less than marked" limitation was not supported by substantial evidence. She also argues that the ALJ failed to satisfy his duty to develop the record. (*Id.* at 27-30).

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Id*. (internal quotations and citation omitted). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted). This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id*. (quotation and citation omitted).

As an initial matter, Plaintiff's argument—that the evidence supports a marked limitation in the domain of acquiring and using information—is based largely on her disagreement with how the ALJ weighed the evidence. In other words, Plaintiff's

contention is that the ALJ failed to sufficiently credit certain items of evidence in the record which she contends support a finding of marked limitations.

Plaintiff's arguments do not require remand. It is not the function of this Court to re-weigh evidence or consider *de novo* whether V.Y.O. is disabled. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine *de novo* whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (quotation and citation omitted)).

The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence. While the record supports that V.Y.O. has some limitations in functioning, the ALJ adequately explained how he arrived at his determination that V.Y.O. has a less than marked limitation in the domain of acquiring and using information.

The domain of acquiring and using information assesses how well a child learns information and how well the child uses the information that is learned. 20 C.F.R. § 416.926a(g). "This domain involves how well children perceive, think about, remember,

and use information in all settings, which include daily activities at home, at school, and in the community." *Tyler J. obo R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-899-DB, 2024 WL 475067, at *9 (W.D.N.Y. Feb. 7, 2024) (citing 20 CFR 416.926a(g) and Social Security Regulation 09-3p)). The regulations provide that school-age children, such as Y.V.O at the beginning of the relevant time period should be able to:

> learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). Adolescents, which Y.V.O. was at the end of the relevant time period, have the following expectations:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

*Id.* at § 416.926a(g)(2)(v).

As explained in the written determination, to support his conclusions, the ALJ considered Plaintiff's testimony that V.Y.O.'s ability to progress in learning is limited and

that she is unable to write in longhand, write a simple story, or understand money and count change correctly. He also considered Plaintiff's testimony that V.Y.O is able to read and understand written stories, spell most three to four letter words, knows the months or the year and days of the week, and how to tell time. (Dkt. 5 at 24-25).

The ALJ also relied on and considered the information in Plaintiff's Individualized Education Program (IEP) for her learning disabilities. Notes in Plaintiff's IEP from her 6th grade year reflect composite test scores of 75 on the Kaufman Brief Intelligence Test taken in February 2020, with a math score of 65, reading score of 78, and written expression score of 83. IEP notes also reflected V.Y.O.'s struggle with inferences, the conventions of writing, and memorization of math multiplication and division facts. The ALJ noted that V.Y.O. received consultant services for math and language arts, and integrated co-teaching services for other subjects in a general education classroom. V.Y.O. also has a 5:1 resource room support for language arts and math, though in March 2021, notes reflected that her progress was impacted by a lack of participation. Her grades in language arts and math improved from the first quarter to the second from a D to a C, but her social studies and science grades worsened due to a failure to compete assignments. The ALJ highlighted that "while performing below grade level, [Plaintiff] has not been retained in a grade and continues primarily in the general education setting with accommodations, co-teaching services, and resource services." (Dkt. 5 at 25). The ALJ also considered April 2021 well-child progress clinic notes that reflected that V.Y.O was in online school for 6th grade with

concerns for learning disabilities but otherwise performing acceptably. (*Id.* at 25). Later clinic notes do not make any mention of any school-related concerns. (*Id.*).

Plaintiff argues that V.Y.O.'s test scores and necessary school supports required further analysis by the ALJ and justify a finding of a marked limitation in the domain of acquiring and using information. But "the fact that Plaintiff was classified as special education does not, standing alone, warrant a finding of a marked limitation." *Grant v. Colvin*, No. 12-CV-962 MAT, 2015 WL 3746707, at *6 (W.D.N.Y. June 15, 2015); *see also Taneisha J. obo A.R.R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-6408-DB, 2023 WL 3044921, at *9 (W.D.N.Y. Apr. 21, 2023) ("Finally, contrary to Plaintiff's suggestion, A.R.R.'s participation in a special education program does not establish the presence of marked limitations in functioning. . . . The regulations expressly state that the fact that a child receives special education services does not establish disability."); *McDaneil o/b/o X.A. v. Comm'r of Soc. Sec.*, No. 17-CV-1326, 2019 WL 3500855, at *6 (W.D.N.Y. Aug. 1, 2019) ("The record here clearly demonstrates that the ALJ gave careful consideration to the entire record determining the level of the child's functioning in and outside of the structured environment X.A. was in. It is undisputed that plaintiff was in a 15:1 self-contained special education classroom, however, consideration of this fact alone does not warrant a finding of a marked limitation."). Similarly, the fact that certain of V.Y.O's test subscores were low does not direct a finding of marked limitation. *Juarez on behalf of R.R.O. v. Saul*, 800 F. App'x 63, 65 (2d Cir. 2020) (rejecting argument that test scores which were two standard deviations below the mean "establish as a matter of law that [child] suffered a marked limitation [in acquiring and using information] . . . the Social

Security regulations rely not just on test scores, but also require the Commissioner to take into account whether a claimant's 'day-to-day functioning in domain-related activities is consistent with th[ose] score[s].'" (quoting 20 C.F.R.§ 416.926a(e)(2)(iii))).

In addition to V.Y.O.'s school and medical records, the ALJ also considered the assessments of the state agency consultants who found less than marked limitations in acquiring and using information. The ALJ found the opinions persuasive, explaining that:

> These conclusions are from reviewing sources with program knowledge who gave detailed and rational explanations as to the objective medical evidence relied upon in support of their findings (Exhibits B4A & B7A). Their findings were consistent with the evidence of record at the time in which they were offered and remain generally consistent with the overall evidence of record showing that [V.Y.O.] is progressing academically with the assistance of special education services/accommodations and outside of curriculum is otherwise generally well-adjusted for independent functioning and social/emotional behaviors. [V.Y.O.] has never been prescribed mental health medications, is involved in no ongoing mental health treatment, and psychological consultative exam findings indicated no significant psychological abnormalities (Exhibit B5F).

(Dkt. 5 at 29). Likewise, consultative examiner Adam Brownfield, Ph.D., opined that V.Y.O. was moderately limited to learning in accordance to cognitive functioning. (*Id.* at 474). The ALJ found Dr. Brownfield's opinions partially persuasive to the extent it was suggestive of no greater limitations than determined by the ALJ, but found the state agency consultants, who were able to review the complete medical file and Dr. Brownfield's opinion, to be more persuasive. (*Id.* at 29). These opinions provide substantial evidence to support the ALJ's determination. Importantly, Plaintiff does not assign any error to the ALJ's assessment of the medical opinion evidence and none is otherwise apparent. *Tyler J. obo R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-899-DB, 2024 WL 475067, at *9-10 (W.D.N.Y. Feb. 7, 2024) (affirming ALJ's finding of less than marked limitations which

were consistent with the opinion of psychiatric consultative examiner and prior administrative findings of state agency medical consultant).

The ALJ acknowledged two teacher questionnaires in the record that were submitted in connection with an earlier SSI application, which were dated December 2017 and October 2019. (Dkt. 5 at 29). The ALJ stated that the questionnaires gave some insight from a historical perspective but provided no insight during the relevant time period, and thus had little overall persuasive value. (*Id.* at 29); s*ee Spruill ex rel. J.T. v. Astrue*, No. 6:12-CV-6060 MAT, 2013 WL 885739, at *6 (W.D.N.Y. Mar. 8, 2013) (approving ALJ's disregard of teacher questionnaires that related to an earlier time period). He further noted that the questionnaires were submitted and previously considered in connection with a prior application that was denied by an ALJ and by the Appeals Council on review.[2] (*Id.*). The Court finds no error in the ALJ's determination not to give the teacher questionnaires more weight.

In *Ryan on Behalf of V.D.C. v. Comm'r of Soc. Sec.,* No. 21-2947-CV, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022), the Second Circuit concluded that substantial evidence supported an ALJ's determination that the claimant had a less than marked limitation in the domain of acquiring and using information. The Court noted that "the ALJ carefully assessed the complete record, which includes school records, hearing testimony, treatment notes, and medical opinion evidence," and that "[f]ollowing

---

[2] Contrary to Plaintiff's suggestion, the fact that the prior ALJ found her to have a marked limitation in this domain on an earlier application relating to a different time period has no impact on the instant application. *See Wessel v. Colvin*, No. 3:14CV00184 (AVC), 2015 WL 12712297, at *5 (D. Conn. Dec. 30, 2015) ("When a plaintiff's claim involves a different unadjudicated time period, an ALJ is not bound by a prior ALJ's findings.").

discussion of the evidence, the ALJ reasoned that V.D.C. passed to every grade level without being held back, that he showed improvement with academic grades and intellectual tests, on which he scored at or near the average range, and that no consultative examiner determined that V.D.C. had marked or extreme limitation in acquiring and using information." *Id.* So too here, the ALJ reviewed V.Y.O.'s IEP, test scores, and medical opinion evidence in connection with his determination, and there are no medical opinions of record suggesting that V.Y.O. had a marked limitation in this domain. Like the determination in *Ryan,* the Court concludes that the ALJ's determination is supported by substantial evidence.

In sum, while Plaintiff argues that evidence in the record supported a marked limitation in this domain, "[t]he ALJ is permitted to resolve such evidentiary conflicts." *Cotton o/b/o J.T.C. v. Comm'r of Soc. Sec.*, No. 19-CV-6542-FPG, 2020 WL 5800820, at *4 (W.D.N.Y. Sept. 28, 2020); *see also Casey P. obo Q.F.A. v. Comm'r of Soc. Sec.*, No. 1:21-CV-831-DB, 2023 WL 6148035, at *9 (W.D.N.Y. Sept. 20, 2023) ("Even assuming, *arguendo*, that there was some conflict, it was the ALJ's sole responsibility to evaluate the medical evidence and resolve any material conflicts in the record, and in this case, after weighing all the evidence, the ALJ reasonably found Q.F.A. to have only a marked limitation in the domain of health and physical well-being."). The ALJ is only required to build an accurate and logical bridge between the evidence and the decision to enable a court

to engage in a meaningful review of his conclusions, which, contrary to Plaintiff's contentions, he has done here.

Finally, Plaintiff argues that the ALJ's failure to obtain an updated teacher questionnaire or additional school records created a gap in the record. While it is undisputed that "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record," *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), the responsibility to develop the record is not limitless. Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17-CIV-5392-GBD-KHP, 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation

marks and citation omitted); *Kaliegh O. on behalf of S.S.T. v. Berryhill*, No. 5:17-CV-960 (CFH), 2018 WL 4054098, at *9 (N.D.N.Y. Aug. 24, 2018) (holding that plaintiff must establish "beyond conclusory assertions" that there was a gap in the record precluding the ALJ from making his determination).

Here, at the hearing, Plaintiff's counsel advised the ALJ that he was "trying to get a teacher questionnaire from the special ed teacher, but she's been reluctant to send it back; we've been following up, and we're still hopeful that we can get it back within the next week or so." (Dkt. 5 at 45). The ALJ agreed to keep the record open for a couple of weeks and stated that if the questionnaire did not come in, he expected to hear from counsel. (*Id.* at 46). No further records were submitted and there is no evidence that Plaintiff sought further assistance from the ALJ. (*Id.* at 19). Although additional school records and teacher questionnaires may have supplemented the information before the ALJ, Plaintiff has not established that the lack of this information created an obvious gap in the record to trigger the ALJ's duty to further develop the record. *Ximora B. o/b/o J.Y.S.B. v. Kijakazi*, No. 20-CV-1435L, 2022 WL 2275671, at *2-3 (W.D.N.Y. June 23, 2022) (ALJ not required to obtain additional teacher questionnaires where the record included claimant's IEPs, test scores, academic records, medical records, and medical opinions and "the ALJ's findings were overwhelmingly consistent with, and supported by, this evidence"). Accordingly, remand is not warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: August 5, 2024
Rochester, New York